UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MYRNA IRIS ALGARIN ROSADO, | * |
| Plaintiff, | * |
| v. | * |
| | *   Civil Action No. 13-30201-MGM |
| CAROLYN COLVIN, | * |
| Acting Commissioner of Social Security, | * |
| Defendant. | * |

MEMORANDUM AND ORDER REGARDING PLAINTIFF'S
MOTION FOR JUDGMENT ON THE PLEADINGS AND
DEFENDANT'S MOTION FOR ORDER AFFIRMING COMMISSIONER
(Dkt. Nos. 13 and 22)

March, 16 2015

MASTROIANNI, U.S.D.J.

This is an action for judicial review of a final decision by Carolyn Colvin, the Acting Commissioner of the Social Security Administration ("Commissioner"), denying Plaintiff's application for Supplemental Security Income ("SSI") benefits pursuant to 42 U.S.C. § 1383(c)(3) (referencing 42 U.S.C. § 405(g)). The parties have filed cross-motions for judgment on the pleadings. At issue is whether the Administrative Law Judge ("ALJ") erred by giving improper weight to certain items in the Administrative Record ("A.R.") (Dkt. No. 12), including failing to properly exercise his discretion in discounting Plaintiff's credibility.

As discussed below, the ALJ properly exercised his discretion in determining what weight to give certain consultative evaluations, the testimony of the vocational expert, evidence related to Plaintiff's obesity, and Plaintiff's own testimony. The court will, therefore, deny Plaintiff's Motion for Judgment on the Pleadings, (Dkt. No. 13), and allow Defendant's Motion for Order Affirming the Decision of the Commissioner, (Dkt. No. 22).

The parties are familiar with the factual and procedural history of this case, so the court begins its discussion with the standard of review.

I. STANDARD OF REVIEW

The role of a district court reviewing an ALJ's decision is limited to determining whether the conclusions were supported by substantial evidence and based on the correct legal standard. See Seavey v. Barnhart, 276 F.3d 1, 9 (1st Cir. 2001). "The findings of the Commissioner of Social Security [and his designee, the ALJ] as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. 405(g). Substantial evidence means that "a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support [the Commissioner's] conclusion." Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981). Credibility judgments made by ALJs who have "observed the claimant, evaluated his demeanor, and considered how that testimony fit in with the rest of the evidence, [are] entitled to deference, especially when supported by specific findings." Frustaglia v. Sec'y of Health & Human Servs., 829 F.2d 192, 195 (1st Cir. 1987). The court reviews questions of law de novo. Ward v. Comm'r of Social Security, 21 F.3d 652, 655 (1st Cir. 2000).

II. DISABILITY STANDARD AND THE ALJ'S DECISION

Entitlement to SSI requires a showing of both disability and financial need. See 42 U.S.C. § 1381a. Here, Plaintiff's financial need is not challenged.

The Social Security Act (the "Act") defines disability, in part, as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a

continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). An individual is considered disabled under the Act,

> only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B). See generally Bowen v. Yuckert, 482 U.S. 137, 146-49 (1987).

In determining disability, the Commissioner follows the five-step protocol described by the First Circuit as follows:

> 1) if the applicant is engaged in substantial gainful work activity, the application is denied; 2) if the applicant does not have, or has not had within the relevant time period, a severe impairment or combination of impairments, the application is denied; 3) if the impairment meets the conditions for one of the 'listed' impairments in the Social Security regulations, then the application is granted; 4) if the applicant's "residual functional capacity" is such that he or she can still perform past relevant work, then the application is denied; 5) if the applicant, given his or her residual functional capacity, education, work experience, and age, is unable to do other work, the application is granted.

Seavey v. Barnhart, 276 F.3d at 5; see also 20 C.F.R. § 416.920(a)(4).

In the instant case, the ALJ found as follows with respect to these steps. First, Plaintiff has not engaged in substantial gainful activity since February 14, 2011. (SSA Admin. Rec. of Soc. Sec. Proceedings 16, Dkt. No. 12 (hereinafter A.R.).) Moving to step two, the ALJ found Plaintiff had two severe impairments: adjustment disorder with mixed anxiety and depressed mood and right shoulder tendonitis. (A.R. at 16.) The ALJ also found Plaintiff had several non-severe impairments, at least one of which may have been aggravated by Plaintiff's obesity. (A.R. 17.) In classifying Plaintiff's impairments, the ALJ did not credit Plaintiff's own assessments of severity to the extent Plaintiff had declined treatment. (A.R. 17.) At the third step, the ALJ determined Plaintiff's impairments do not, singly or in combination, meet or medically equal the severity of one of the

3

impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (A.R. 18.) Specifically, the ALJ considered whether Plaintiff's right shoulder tendonitis fell within listing 1.02, covering major dysfunction of a joint, and determined it did not cause the level of dysfunction described. (A.R. 18.) The ALJ also considered Plaintiff's mental impairments and whether they met the criteria of listings 12.04 or 12.06. (A.R. 19.) Noting only mild impairments to Plaintiff's activities of daily living; moderate impairments in the areas of social functioning, concentration, persistence, and pace; and an absence of episodes of decompensation, the ALJ determined Plaintiff's mental impairments did not meet the criteria of listings 12.04 or 12.06. (A.R. 19.)

Continuing to step four, the ALJ found Plaintiff had a residual functional capacity ("RFC") to perform medium work, as defined in 20 C.F.R. 416.967(c), with some additional limitations on Plaintiff's use of her right upper arm for overhead reaching[1] and concentrated exposure to pulmonary irritants (fumes, odors, dust and gases). (A.R. 20.) Additionally, the ALJ determined Plaintiff's RFC limited her to work consisting "of only simple, routine tasks with short, simple instructions, having only simple work related decisions with few workplace changes" and only occasional interaction with others. (A.R. at 20.) He concluded that even with these limitations, together with the limitations of her age, education, and work experience, Plaintiff is capable of performing "jobs that exist in significant numbers in the national economy." (A.R. 27.) As a result of these findings, the ALJ ultimately denied Plaintiff's application for SSI benefits.

III. DISCUSSION

Plaintiff makes four arguments challenging the ALJ's decision. All of these arguments relate to the ALJ's findings regarding the severity of Plaintiff's impairments, as relevant to steps two, three,

---

[1] The RFC identified by the ALJ limited Plaintiff to "frequent use" of her right upper extremity for overhead reaching. Frequent use must not exceed two thirds of the work day. SSR 83-10. The court notes the vocational expert who testified at the hearing indicated that changing the limitation to allow only occasional use of the upper right extremity for overhead reaching did not alter the list of jobs available. (A.R. at 66-67.)

4

four and five of the sequential process for determining disability. First, Plaintiff argues the ALJ erred by failing to require an additional consulting examination closer in time to the hearing because the consulting examinations in the record were insufficient to establish whether Plaintiff's impairments would meet the durational requirement at the third step. Second, Plaintiff argues the ALJ improperly discounted her credibility when evaluating the severity of her impairments and their impact on her RFC. Third, and raised for the first time at the hearing, Plaintiff argues the ALJ failed to properly consider Plaintiff's obesity and its impact on her non-severe impairments.[2] Finally, Plaintiff asserts the ALJ erred in relying on the testimony of the vocational expert ("VE") at step five because the RFC the ALJ provided to the VE did not include all of Plaintiff's impairments. In response, the Commissioner argues that substantial evidence supports the ALJ's determination at each step of the five-step process for determining disability and the ALJ appropriately exercised his discretion in determining how much weight to give evidence, including Plaintiff's own testimony. The court addresses the arguments in turn.

A.  Consulting Examinations and the Durational Requirement

Plaintiff submitted her application for SSI benefits on February 14, 2011. In May, 2011, Dr. Jane Jagelman performed a consultative examination with respect to Plaintiff's psychological impairments and Dr. Daniel Dress performed a consultative examination with respect to Plaintiff's physical impairments. (A.R. 253-256; 257-259.) The ALJ considered, and gave great weight to, the opinions of Dr. Jagelman and Dr. Dress, noting their opinions were formed by independent sources following full evaluations and were consistent with the record as a whole. (A.R. 24.) Plaintiff asserts the ALJ should not have accorded such weight to these opinions because at the time of the

---

[2] Plaintiff raised this argument for the first time at oral argument. The court granted the government's request to respond to this argument in writing and this supplemental submission is at Dkt. No. 30.

examinations none of Plaintiff's impairments had yet lasted for twelve months from her alleged onset date of December 1, 2010.

Plaintiff's argument misconstrues both 42 U.S.C. § 1382c(a)(3)(A) and the ALJ's conclusion regarding Plaintiff's alleged disability. First, by suggesting an applicant must demonstrate she <u>has</u> suffered from a "medically determinable physical or mental impairment" for twelve months, Plaintiff ignores the clear language allowing an applicant to establish a disability, as defined in § 1382c(a), by showing she suffers from an impairment that is <u>expected</u> to last for at least twelve months or to cause the applicant's death. Second, Plaintiff has not pointed to anything in the ALJ's decision, and the court finds nothing, indicating the ALJ would have found Plaintiff disabled, but for the durational requirement. To the extent Plaintiff argues subsequent medical examinations would have revealed additional impairments or more severe symptoms, it was Plaintiff's obligation to present such information to the ALJ. <u>See</u> 20 C.F.R. 416.912; <u>see also</u> <u>Currier v. Sec'y of Health, Ed., & Welfare</u>, 612 F.2d 594 (1st Cir. 1980) ("In most instances, where appellant himself fails to establish a sufficient claim of disability, the Secretary need proceed no further."). Plaintiff's testimony did not identify significant changes in her symptoms or impairments from the time she filed her application through the date of her hearing, and she has not identified any for this court. Finally, even if the ALJ had erred with respect to the durational requirement, Plaintiff's argument would still fall short because the ALJ did not base his conclusion that Plaintiff was not disabled on her failure to satisfy the durational requirement. <u>See</u> <u>Gordlis v. Sec'y of Health & Human Servcs.</u>, 921 F.2d 327, 329-330 (1st Cir. 1990) (concluding an error as to one subsidiary finding may, on its own, be insufficient to require the ALJ to amend the ultimate disability determination).

B.	Plaintiff's Credibility

Plaintiff next argues the ALJ erred in deciding not to credit Plaintiff's testimony concerning the intensity, persistence, and limiting effects of her symptoms to the extent her testimony was inconsistent with his RFC determination because he failed to fully consider all of the relevant regulatory factors.³ There is significant overlap among the various factors listed in 20 C.F.R. §416.929. Of the seven factors, one references daily activities; three require consideration of information about when symptoms occur and their limiting effects; and the other three address methods the claimant uses to treat symptoms, especially pain. Plaintiff's characterization of the ALJ's decision notwithstanding, the ALJ made express findings relevant to each of the regulatory factors. Although it may have been possible for the ALJ to address the seven factors with more specificity, his express findings are sufficient to show that he considered Plaintiff's daily activities, the symptoms she described, and her methods for treating them. (A.R. 21-26.)  See Frustaglia, 829 F.2d at 195 (affirming ALJ decision where "more express findings" would have been "preferable," but entire record includes substantial evidence to support ALJ determination).

Specifically, the ALJ considered the scope of Plaintiff's daily activities, especially her activities caring for her children. (A.R. 21, 23, 25.) The ALJ also noted Plaintiff's use of non-prescription medication to significantly reduce her shoulder pain, an absence of medical evidence of physical dysfunction, and Plaintiff's failure to attend some medical appointments. (A.R. 22-23.) Taken together, the ALJ concluded this evidence suggested Plaintiff's physical symptoms might not be as severe as reported. (A.R. 23.)

With respect to Plaintiff's mental health impairments, the ALJ identified a delay between Plaintiff's asserted onset date and the time she sought treatment beyond her primary care physician.

---

³ In setting forth the regulatory factors, Plaintiff references 20 C.F.R. § 404.1529, as the government has correctly pointed out, § 404.1529 is not relevant to SSI claims. However, pursuant to 20 C.F.R. § 416.929, the same list of factors is applicable to SSI claims.

(A.R. 25.) He also noted Plaintiff had received minimal treatment from mental health providers and highlighted comments in medical opinions indicating Plaintiff's psychological impairments improved when she received treatment. (A.R. 25.) As the applicable standard asks whether the ALJ's conclusions are supported by substantial evidence, not whether the available evidence could have supported a different conclusion, this court finds the ALJ did not err when he chose not to fully credit Plaintiff's testimony concerning the severity of her symptoms. See Rodriguez Pagan v. Sec'y Health & Human Servcs., 819 F.2d 1, 3 (1st Cir. 1987)(affirming credibility determinations "even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence.").

C.  Plaintiff's Obesity

At oral argument Plaintiff argued, for the first time, the ALJ misapplied the law in evaluating the impact of Plaintiff's obesity by only considering its impact on the impairments the ALJ determined to be severe. Pursuant to Social Security Ruling 02-1p, which provides guidance on how obesity is evaluated in disability claims, the Social Security Administration is directed to consider an applicant's obesity at various steps of the sequential evaluation process. A claimant's obesity must be considered when determining whether an applicant has an impairment that is listed or equivalent to listed impairments and when assessing an individual's RFC. SSR 02-1p, 2000 WL 628049, at *1 (S.A.A. Sept. 12, 2002). If the applicant's obesity, considered individually or in combination with other medically determinable impairments, "significantly limits an individual's physical or mental ability to do basic work activities[,]" it must be considered to be a severe impairment. Id. at *4. Obesity may also be a factor in determining whether a claimant has an impairment that meets or equals a listed impairment, but the obesity must actually impose a limitation on the claimant. Id. at

8

*5. Finally, functional limitations caused by a claimant's obesity should be considered when an RFC is set. Id. at *6.

At the hearing before the ALJ, neither Plaintiff nor her representative identified her obesity as a limiting condition. (A.R. 35-70.) Only a single medical record appears to reference Plaintiff's obesity—a treatment note from August 2011 hypothesizing Plaintiff's knee pain could have been caused by a tear "aggravated by her obesity." (A.R. 282.) Despite the limited information in the medical record concerning Plaintiff's obesity, the ALJ specifically considered Plaintiff's obesity in light of SSR 02-1p and found it did not result "in any significant limitation" to Plaintiff's ability to "do basic work activities." (A.R. 18.) The ALJ reached this conclusion following an exhaustive assessment of all of Plaintiff's claimed impairments, both severe and non-severe. In the course of his assessment of Plaintiff's impairments, the ALJ noted the possible connection between Plaintiff's knee pain and her obesity, but went on to find Plaintiff's decision not to pursue treatment for her knee pain, regardless of its cause, indicated her symptoms were not as severe as alleged. (A.R. 17.) Given the absence of record evidence linking claimant's obesity with any of Plaintiff's severe impairments or indicating Plaintiff's ability to do basic work activities was limited by her obesity, Plaintiff's argument, asserting the ALJ did not properly consider Plaintiff's obesity, is without merit.

D.     Formulation of the RFC and Hypotheticals Presented to VE

Finally, Plaintiff argues the ALJ erred in relying, at step five, on the testimony of the VE to find Plaintiff was capable of performing work existing in significant numbers in the national economy because the RFC assigned by the ALJ did not reflect all of Plaintiff's impairments. As discussed above, the ALJ carefully considered Plaintiff's testimony and the medical evidence available in the record when he formulated Plaintiff's RFC. The ALJ considered all of Plaintiff's impairments in setting the RFC, as evidenced by the inclusion of limitations related to Plaintiff's

non-severe impairments, such as the limitation on exposure to pulmonary irritants. (A.R. 20.) Plaintiff's challenge to the RFC relies on her success in challenging the ALJ's credibility determination. As this court has found the ALJ's decisions regarding the credibility and weight assigned to different components of evidence were supported by substantial evidence in the record, the ALJ's RFC determination (and related reliance on the VE's testimony) are also supported by substantial evidence.

## IV. Conclusion

For these reasons, the court DENIES Plaintiff's Motion for Judgment on the Pleadings, (Dkt. No. 13), and ALLOWS Defendant's Motion for Order Affirming Decision of the Commissioner, (Dkt. No. 22). The clerk shall enter judgment for Defendant, and this case may now be closed.

It is So Ordered.

    /s/ Mark G. Mastroianni
MARK G. MASTROIANNI
United States District Judge